# IN THE UNITED STATES DISTRICT COURT FOR THE
## WESTERN DISTRICT OF MISSOURI
### CENTRAL DIVISION

MARY L. HOLBERT,        )
                                   )

     Plaintiff,           )
                                   )

     v.                    )           No. 2:13-CV-4045-C-DGK-SSA
                                   )

CAROLYN W. COLVIN,       )
Acting Commissioner of Social Security,   )
                                   )

     Defendant.          )

## ORDER AFFIRMING THE COMMISSIONER'S DECISION

Plaintiff Mary L. Holbert seeks judicial review of the Commissioner of Social Security's denial of her application for disability insurance benefits under Title II of the Social Security Act, 42 U.S.C. §§ 401-434. The Administrative Law Judge ("ALJ") found Plaintiff had multiple severe impairments, including hypertension, hyperlipidermia, and obesity, but she retained the residual functional capacity ("RFC") to perform work as security guard, cashier, assembler, and hand packer wrapper.

Because substantial evidence on the record as a whole supports the ALJ's opinion, the Commissioner's denial of benefits is AFFIRMED.

### Factual and Procedural Background

A summary of the entire record is presented in the parties' briefs and is repeated here only to the extent necessary.

Plaintiff filed her application for disability insurance benefits on November 26, 2007, alleging a disability onset date of July 2, 2007. The Commissioner denied her application, an ALJ subsequently affirmed the denial, and Plaintiff sought review from the Appeals Council. On May 24, 2010, the Appeals Council remanded the case for another hearing, directing the ALJ to:

(1) obtain updated treatment records from Plaintiff's treating psychologist, Margaret Harlan, Ph.D. ("Dr. Harlan"), (2) consider all third party statements in the record, (3) evaluate Plaintiff's mental impairments in accordance with the special technique described in 20 C.F.R. § 404.1520a, (4) evaluate the effects of her obesity, (5) reformulate her RFC, and (6) properly pose questions to the vocational expert. After expanding the record according to these directions and conducting another hearing on September 10, 2010, the ALJ again found Plaintiff was not disabled. This time the Appeals Council declined review, leaving the ALJ's decision as the Commissioner's final decision. In declining review, the Appeals Council rejected new medical evidence presented by Plaintiff because the evidence documented her condition after her date of last insured. Plaintiff has exhausted all of her administrative remedies and judicial review is now appropriate under 42 U.S.C. § 405(g).

## Standard of Review

A federal court's review of the Commissioner of Social Security's decision to deny disability benefits is limited to determining whether the Commissioner's findings are supported by substantial evidence on the record as a whole. *Buckner v. Astrue*, 646 F.3d 549, 556 (8th Cir. 2011). Substantial evidence is less than a preponderance, but enough evidence that a reasonable mind would find it sufficient to support the Commissioner's decision. *Id.* In making this assessment, the court considers evidence that detracts from the Commissioner's decision, as well as evidence that supports it. *McKinney v. Apfel*, 228 F.3d 860, 863 (8th Cir. 2000). The court must "defer heavily" to the Commissioner's findings and conclusions. *Hurd v. Astrue*, 621 F.3d 734, 738 (8th Cir. 2010). The court may reverse the Commissioner's decision only if it falls outside of the available zone of choice, and a decision is not outside this zone simply because the court might have decided the case differently were it the initial finder of fact. *Buckner*, 646 F.3d at 556.

## Analysis

In determining whether a claimant is disabled, that is, unable to engage in any substantial gainful activity by reason of a medically determinable impairment that has lasted or can be expected to last for a continuous period of not less than twelve months, 42 U.S.C. § 423(d), the Commissioner follows a five-step sequential evaluation process.[1]  Plaintiff contends the ALJ erred: (1) at Step Two by finding that her depression and diabetes were non-severe impairments; and (2) at Step Four by discounting the opinion of Plaintiff's treating psychologist, Dr. Harlan.

Before addressing these specific arguments, the Court makes a general observation about the record evidence which impacts its analysis.  To be entitled to insurance benefits, Plaintiff was required to prove disability between her alleged onset date (July 2, 2007) and the date her insurance expired (September 30, 2009).  *See Moore v. Astrue*, 572 F.3d 520, 522 (8th Cir. 2009).  Here, the ALJ ultimately determined that Plaintiff did not carry this burden.  In reviewing whether substantial evidence supports this decision, however, the Court is not constrained to only evaluate the evidence considered by the ALJ.  *See Cunningham v. Apfel*, 222 F.3d 496, 500 (8th Cir. 2000).  Rather, the Court may consider new, relevant evidence that was introduced after the ALJ's decision, so long as it relates to the relevant time period of disability.  *Id*. Accordingly, in analyzing Plaintiff's arguments, the Court only considers the new, relevant

---

[1] "The five-step sequence involves determining whether (1) a claimant's work activity, if any, amounts to substantial gainful activity; (2) his impairments, alone or combined, are medically severe; (3) his severe impairments meet or medically equal a listed impairment; (4) his residual functional capacity precludes his past relevant work; and (5) his residual functional capacity permits an adjustment to any other work.  The evaluation process ends if a determination of disabled or not disabled can be made at any step." *Kemp ex rel. Kemp v. Colvin*, 743 F.3d 630, 632 n.1 (8th Cir. 2014); see 20 C.F.R. §§ 404.1520(a)–(g).  Through Step Four of the analysis the claimant bears the burden of showing that he is disabled.  After the analysis reaches Step Five, the burden shifts to the Commissioner to show that there are other jobs in the economy that the claimant can perform.  *King v. Astrue*, 564 F.3d 978, 979 n.2 (8th Cir. 2009).

evidence that relates to Plaintiff's medical conditions between July 2, 2007, and September 30, 2009.

## A. The ALJ did not err in finding Plaintiff's depression and diabetes were non-severe impairments.

Plaintiff first challenges the ALJ's finding that her depression did not constitute a severe impairment. In particular, Plaintiff contends that because Dr. Harlan diagnosed her with Major Depressive Disorder ("MDD")[2] and other medical professionals prescribed her antidepressants, the ALJ erred in finding that her MDD had only a minimal effect on her ability to work. This argument lacks merit.

At Step Two of the sequential process, the ALJ is tasked with determining whether the claimant has a severe mental or physical impairment. A severe impairment is an impairment that significantly limits a claimant's physical or mental ability to perform basic work activities. 20 C.F.R. § 404.1520(c). An impairment is not severe when it has no more than a minimal effect on an individual's ability to work. 20 C.F.R. § 404.1521; SSR 96-3p, 1996 WL 374181 (July 2, 1996). The impairment "must result from anatomical, physiological, or psychological abnormalities which can be shown by medically acceptable clinical and laboratory diagnostic techniques . . . and must be established by medical evidence consisting of signs, symptoms, and laboratory findings, not only by [the claimant's] statement of symptoms . . ." *Martise v. Astrue,* 641 F.3d 909, 923 (8th Cir. 2011) (alteration in original) (quoting 20 C.F.R. § 404.1508). The claimant bears the burden of establishing that her impairment is severe. *Kirby v. Astrue*, 500 F.3d 705, 707 (8th Cir. 2007). Although severity is not an onerous requirement to meet, it is also "not a toothless standard." *Id*. at 708.

---

[2] Dr. Harlan also diagnosed Plaintiff with General Anxiety Disorder. R. at 367. Plaintiff, however, does not challenge the ALJ's failure to discuss this alleged impairment. *See* Doc. 16, at 34 ("The Administrative Law Judge committed reversible legal error with his finding at step 2 that Plaintiff's *depression and her diabetes impairments* were non severe.") (emphasis added). Since Plaintiff solely challenges the ALJ's depression finding, the Court confines its analysis to this issue.

Here, the ALJ properly determined that Plaintiff's MDD was not a severe impairment. As a threshold matter, an ALJ is not necessarily required to find a severe impairment simply because a medical professional diagnoses the claimant with depression, *see Buckner*, 646 F.3d at 557, or a medical professional prescribes antidepressant medication. *See Matthews v. Bowen*, 879 F.2d 422, 424-25 (8th Cir. 1989). Thus, the fact that Dr. Harlan diagnosed Plaintiff with MDD and other medical professionals prescribed her medication for the disorder does not necessarily mean the impairment was severe.

Instead, the ALJ must evaluate the record evidence as a whole to determine whether the depression impacts a claimant's ability to work. *Id.* This requires the ALJ to evaluate a claimant's functional limitations in four areas: activities of daily living; social functioning; concentration, persistence, or pace; and episodes of decompensation. 20 CFR § 404.1520a(d)(2). A mental impairment is non-severe if it results in no episodes of decompensation and no more than mild limitations in the areas of maintaining concentration, persistence, and pace; social functioning; and activities of daily living. 20 C.F.R. §§ 404.1520a(d)(1), 416.920a(d)(1).

Here, the ALJ's application of these factors led him to conclude that Plaintiff's depression was non-severe, and substantial evidence supports this decision. First, as evidenced by the hearing testimony from consulting psychologist James Reid, Ph.D ("Dr. Reid"), R. at 53, the record is completely devoid of any evidence indicating a single episode of decompensation. As for maintaining concentration, persistence, and pace, during many doctor visits Plaintiff was alert, oriented, pleasant, and cooperative, R. at 322, 325, 391, 393, 441, and she exhibited normal speech, memory, thought processes, and affect. R. at 385-87, 389, 395. Moreover, Dr. Harlan's opinion also documented fairly normal findings concerning this functional area. *See* R. at 364 (observing that Plaintiff performed well in a variety of tests used to gauge her level of cognitive functioning); *see also* R. at 53 (Dr. Reid opining that Dr. Harlan's findings from a mini mental

status exam suggested that her mental functioning was within normal limits). With respect to social functioning, Plaintiff acknowledged in the past that any limitations within this sphere were self-imposed rather than a result of her depression, R. at 53, 366, and Plaintiff fails to cite any record evidence to the contrary. In this same vein, Plaintiff's purported limitations in daily living are attributable to her alleged physical impairments, not her mental ones. R. at 42, 53, 270-286.

On a whole, this evidence aligns with the opinion of consulting psychologist Stanley Hutson, Ph.D. ("Dr. Hutson"), who found Plaintiff had no limitations in the four major functional areas. R. at 353. In fact, the only evidence suggesting that Plaintiff possessed any limitations in these functional areas is Dr. Harlan's opinion, but as discussed below, the ALJ properly discounted it. Accordingly, the ALJ did not err in finding that Plaintiff's depression was a non-severe impairment.

Similarly, the ALJ did not err in finding that her diabetes was a non-severe impairment. The ALJ summarily ruled that Plaintiff's diabetes has "not caused more than minimal limitation in her ability to perform work activities." R. at 13. Granted, the ALJ could have provided a more thorough discussion of why the diabetes did not cause more than minimal limitations, but a review of the record clearly illuminates his rationale. Aside from providing evidence about her diabetes diagnosis and commensurate prescriptions, R. at 38, Plaintiff failed to present any evidence indicating that it imposed any functional limitations. On the contrary, health care professionals routinely documented that the medication controlled her diabetes and she exhibited no complications from the disorder. R. at 249, 385, 407, 433, 436-37, 440.[3] While the burden at

---

[3] Plaintiff's diabetes eventually required insulin injections, but this treatment commenced on April 20, 2010. R. at 426. These records do not reflect the severity of her condition during the relevant time period (July 7, 2007 through September 30, 2009). *Long v. Chater*, 108 F.3d 185, 187 (8th Cir. 1997).

Step Two is not onerous, it does require Plaintiff to present some evidence supporting her position. *See Kirby*, 500 F.3d at 708. She has failed to do so here, thus the ALJ did not err.

## B. The ALJ did not err in formulating Plaintiff's RFC.

Plaintiff next asserts that the ALJ's RFC formulation is not supported by substantial evidence. Citing *Cunningham v. Apfel*, 222 F.3d 496, 502 (8th Cir. 2000), Plaintiff contends the Court must consider any new, relevant evidence concerning her disability. Plaintiff contends that *Cunningham* compels the Court to consider all of Dr. Harlan's opinions, even those postdating the ALJ's decision, and to reweigh the record evidence in light of this new evidence. According to Plaintiff, once the Court does this, it is clear that the ALJ's RFC formulation is not supported by substantial evidence.[4]

Here, Plaintiff's argument is premised on the assumption that Dr. Harlan's opinions were and are entitled to significant, if not controlling, weight. Where, as here, a claimant presents a treating physician's opinion it is typically entitled to controlling weight if it is well supported by, and not inconsistent with, other substantial evidence in the record. *Myers v. Colvin*, 721 F.3d 521, 524 (8th Cir. 2013) (citing 20 C.F.R § 404.1527(c)(2)). A treating physician's opinion, however, "is entitled to controlling weight only to the extent it is consistent with medically acceptable clinical or laboratory diagnostic data." *Casey v. Astrue*, 503 F.3d 687, 692 (8th Cir. 2007); *see also* 20 C.F.R. §§ 404.1527(c)(2), 416.927(c)(2). A treating physician's opinion is not afforded controlling weight when the opinion is internally inconsistent, *Myers*, 721 F.3d at 525, or when it is inconsistent with, or unsupported by, the physician's own treatment notes. *Davidson v. Astrue*, 578 F.3d 838, 843 (8th Cir. 2009). Although an ALJ may discount a treating

---

[4] While the newly presented evidence contains records from other medical sources, Plaintiff argues that Dr. Harlan's opinion alone changes the outcome. *See* (Doc. 16 at 41) ("In light of Dr. Harlan's Report the inquiry then becomes one of determining whether the decision of the Appeals Council or the Administrative Law Judge's Decision is supported by the substantial evidence on the record as a whole."). Plaintiff does not contend that the other records undermine the ALJ's decision.

physician's opinion, the ALJ must provide "good reasons for doing so." *Brown v. Astrue*, 611 F.3d 941, 951 (8th Cir. 2010).

On February 18, 2008, Dr. Harlan, Plaintiff's treating psychologist, provided a short opinion in which she found Plaintiff disabled, primarily because of her MDD. Prior to the hearing in 2010, Dr. Harlan supplemented the first opinion with another short opinion stating that subsequent counseling sessions confirmed her prior determination. R. at 405.

Here, the ALJ soundly rejected these two opinions. First, as the ALJ duly noted, Dr. Harlan's opinion on the ultimate issue of disability is reserved for the commissioner, not a treating physician. *See House v. Astrue*, 500 F.3d 741, 745 (8th Cir. 2007) (the ALJ may reject a treating physician's opinion on the ultimate issue of disability). Additionally, the ALJ properly observed that Dr. Harlan failed to connect her ultimate conclusions to any objective medical evidence or clinical findings. R. at 16. In fact, the treatment notes from other medical professionals arguably conflict with Dr. Harlan's findings. Contrary to Dr. Harlan's opinion that Plaintiff was disabled, treating sources indicated that her depression responded fairly well to medication. R. 391, 393. And as Dr. Reid highlighted in his testimony, R. at 53, findings from objective tests that Dr. Harlan administered for her February 2008 opinion actually contradict her ultimate conclusion. *Compare* R. at 364 (findings from a mental status examination which revealed that Plaintiff's mental functioning was within normal limits), *with* R. at 369 (a checklist form indicating that Plaintiff was disabled). Finally, the ALJ found that Dr. Harlan's opinion conflicted with the opinions of Dr. Reid and Dr. Hutson. *See Travis v. Astrue*, 477 F.3d 1037, 1041 (8th Cir. 2007) ("It is the ALJ's duty to resolve conflicts in the evidence."). Given these conflicts and the ALJ's finding that Dr. Reid's opinion was more thoroughly supported by the record evidence, R. at 16, it was acceptable for the ALJ to credit Dr. Reid's opinion over Dr. Harlan's. *See Prosch v. Apfel*, 201 F.3d 1010, 1014 (8th Cir. 2000) ("[A]n ALJ may credit other

medical evaluations over that of the treating physician when such other assessments 'are supported by better or more thorough medical evidence.'"). Accordingly, the ALJ properly rejected Dr. Harlan's opinions which predated the ALJ's decision.

Additionally, the introduction of Dr. Harlan's post-decision opinion does not alter the soundness of the ALJ's ultimate determination. Although the opinion corroborates the continued existence of Plaintiff's MDD, much of it discusses Plaintiff's condition on December 28, 2010. R. at 610-11. This evidence—which demonstrates a deterioration in her condition *after* her date of last insured—does not prove that she was disabled *during* the relevant time period. *See Moore*, 572 F.3d at 522; *Long v. Chater*, 108 F.3d 185, 187 (8th Cir. 1997) ("When an individual is no longer insured for Title II disability purposes, we will only consider an individual's medical condition *as of* the date she was last insured.") (emphasis added); *see also Roberson v. Astrue*, 481 F.3d 1020, 1026 (8th Cir. 2007) (finding that the Appeals Council did not err in concluding that new records referred to a claimant's condition after the ALJ's decision). To the extent that the opinion refers to her condition during the relevant period (July 2, 2007, through September 30, 2009), it is merely duplicative of her previous opinion. For instance, in her December 28, 2010, opinion, Dr. Harlan merely reaffirmed her February 18, 2008, disability determination. *See* R. at 610 (noting that MDD "continues to be an appropriate diagnosis."). Aside from a cursory statement that this diagnosis was "[b]ased upon multiple counseling sessions and a [p]sychological [e]valuation," R. at 611, her opinion does not cite to any relevant treatment notes or other record evidence supporting her determination. Rather, her new opinion is merely a more thorough rehashing of her prior determination and a summary of evidence already located in the record. This cumulative evidence would not change the outcome. *See Perks v. Astrue*, 687 F.3d 1086, 1093 (8th Cir. 2012).

Because the ALJ did not err in failing to adopt Dr. Harlan's previous opinions, and the new opinion would not alter the ALJ's ultimate determination, the Court finds that substantial evidence supports the ALJ's Step Four determination.

## Conclusion

Since substantial evidence on the record as a whole supports the ALJ's decision, the Commissioner's denial of benefits is AFFIRMED.

**IT IS SO ORDERED.**

Date:  July 28, 2014                             /s/ Greg Kays                                     
                                                 GREG KAYS, CHIEF JUDGE
                                                 UNITED STATES DISTRICT COURT